FILED

2008 MAY 12 PM 3:04

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | |
|---|---|
| HEATHER GRIGGS, | ) 8:08-cv-00909-T-23 TBM |
| Plaintiff, | ) Judge: |
| v. | ) Magistrate Judge: |
| EAGLE ASSET MANAGEMENT, | ) Jury Trial Demanded |
| Defendant. | ) |

## COMPLAINT

Plaintiff Heather Griggs ("Griggs" or "Plaintiff") hereby files this complaint of gender discrimination against Defendant Eagle Asset Management ("Eagle" or "Defendant"), and states as follows:

### JURISDICTION

1. Jurisdiction is based on 28 U.S.C. §1331 and §1343.

### PARTIES

2. Plaintiff Heather Griggs is a former employee of Defendant in its St. Petersburg, Florida offices. Plaintiff resides in this judicial district and was employed by Defendant in this district. Plaintiff has exhausted her administrative remedies with Equal Employment Opportunity Commission ("EEOC"), and has received a notice of right to sue.

3. Defendant Eagle Asset Management, headquartered in St. Petersburg, Florida, is an asset management company that provides "an array of equity and fixed-income investing strategies to a variety of individual and institutional clients, both



1

domestically and abroad."[1] Defendant is a wholly-owned subsidiary of its parent company, Raymond James Financial, Inc. ("Raymond James"), also located in St. Petersburg, Florida.

4. Defendant shares many resources with its parent company Raymond James, including its Human Resources functions, which is headed by Director Courtland James, son of Raymond James' chairman and CEO Thomas James.

## FACTUAL ALLEGATIONS

5. From approximately June 11, 2007, until her unlawful termination on or about July 16, 2007, Plaintiff worked as a junior internal wholesaler for Defendant.

6. As early as her initial interviews, Defendant's management appeared to begin priming Plaintiff for the discrimination that she would soon face. She was told that the department in which she would be working had a "frat house" environment, and that she could compare her potential coworkers to "the dumbest guys that she knew in college," or words to that effect. She was also told during her interviews that "HR [human resources] hates us," or words to that effect, and asked whether she associated with the "cheerleaders or the guys" in college, or words to that effect.

7. Plaintiff was also repeatedly told that she was overqualified for the position of junior wholesaler. Having been a licensed financial advisor and stockbroker prior to these interviews, Plaintiff agreed that she may have been overqualified, but had heard that Raymond James, Defendant's parent company, was a good company to work for. In fact, she had applied for many positions within Raymond James and its various subsidiaries, but received an offer only from Defendant.

---

[1] http://www.eagleasset.com/index.html

8.  Undaunted by management's comments concerning the atmosphere of the office, Plaintiff accepted the position with Eagle, not only because she was interested in working for Raymond James, but because she was also intrigued by the possibility of quick advancement, as she was assured during the interview process that her qualifications would allow her to be promoted quickly.

**Defendant Subjects Plaintiff to Gender Discrimination and a Hostile Work Environment.**

9.  Soon after she began her employment with Defendant, Plaintiff began experiencing patent gender discrimination. On her first day of work, Plaintiff's supervisor, Ralph Profeta ("Profeta"), told her during computer training that she needed to move closer to him, and that she could "sit on his lap if she wanted to," or words to that effect. When she rejected this offer and refused to participate with this behavior, Profeta began neglecting her and failed to train her adequately after that.

10. As one of few women in her office, Plaintiff soon noticed that many of the men in her office used harassing, inappropriate, and vulgar language in the office, and spoke loudly, as if having no fear of reprisal. Some of the comments to which Plaintiff was exposed include, but are not limited to, the following:

   a. She overherad a male coworker tell a female coworker that he liked to smell the seat of another female coworker's chair, and would often sit in it naked while she was away, or words to that effect;

   b. Men in the office would frequently say "suck my ballsack" or words to that effect;

   c. One of Plaintiff's male coworkers told a story about telling a woman to "wash [his] balls" or words to that effect;

3

  d. Men frequently referred to female coworkers as "hot";

  e. In one instance, five of Plaintiff's male coworkers surrounded her cubicle and talked about their jock straps, or words to that effect;

  f. Another male coworker joked that "steroids had made his testicles shrink," or words to that effect; and

  g. Plaintiff's manager, Jim Cieutat ("Cieutat"), cited that one of his goals was to have "two chicks," or words to that effect, referring to sexual relations with two women at once, in front the entire office staff in response to a question during a mock interview exercise.

11. On or about July 2007, Plaintiff voiced her concerns to Cieutat about her environment and her uncomfortability around Profeta. Cieutat told her that there had been complaints to Human Resources regarding such behavior in their department, and that Defendant's Executive Vice President of Sales and Marketing, Richard Rossi, needed to speak to the department about it. However, rather than attempt to remedy her specific issues with Profeta, Cieutat told Plaintiff to "play nice with Ralph" because "she could learn a lot from him," or words to that effect. In response to Plaintiff's issues with the behavior in the office, Cieutat sent an email around the office reminding the employees about company policy regarding the use of "abusive language."

**Defendant Retaliates Against Plaintiff.**

12. After this conversation with Cieutat, Plaintiff began receiving an increased workload, and was given assignments in volume and specificity that were impossible to finish in the time allotted to finish them. On information and belief, none of Plaintiff's

male coworkers were given a similar workload, and if so, none were given similar tight time constraints in which to finish such a large amount of work.

13. Additionally, Profeta gave Plaintiff a work schedule, detailed to the half hour, with requirements as to how she was to spend her workday. On information and belief, none of Plaintiff's male coworkers were given such a schedule or worked under such scrutiny as Plaintiff was required to.

14. Plaintiff then decided to voice her complaints to Human Resources. She detailed her sexually hostile environment, her negative experiences, and the retaliation that she suffered to Andrea Grayson ("Grayson"), a human resources manager. In that conversation, Grayson began focusing intently on Plaintiff's performance rather than her issues of gender discrimination. Plaintiff was confused by Grayson's focus on her performance rather than the occurrences of discrimination, especially because Plaintiff had not been previously made aware of any performance issues. Additionally, Grayson advised Plaintiff that she should attempt to remedy the discrimination herself by saying, for instance, "If I hear that again, I'm going to report you," or words to that effect, to her offending coworkers. Grayson also advised Plaintiff that everything that she had heard about previous complaints in her department was "hearsay," and that she should just "do her work and not get caught up in the gossip," or words to that effect.

15. Grayson also refused Plaintiff's request to be transferred to another department. Plaintiff voiced her concerns regarding further retaliation based on speaking to Grayson, as Plaintiff understood their conversation was supposed to be confidential. Grayson told her that she would have to address the department, but reassured Plaintiff

5

that there would be no retaliation. Interestingly, Grayson also noted that "a bad performance review is not retaliation," or words to that effect.

**Defendant Subjects Plaintiff to Further Retaliation, Eventually Leading To Her Unlawful Termination.**

16. Soon after Plaintiff's telephone conversation with Grayson, Grayson called Plaintiff into her office in the middle of a workday for a brief conversation regarding Plaintiff's issues with her office and the behavior of her male colleagues. When Plaintiff returned to her office the next day, her coworkers knew that she had been to Human Resources, and their treatment of her worsened. Most of them refused to speak to her, and there was even an email sent around with the subject "who's the rat?" Further, Cieutat addressed her in a condescending manner by thanking her for bringing the inappropriate behavior to the attention of management, and asked her whether there was an improvement in the office environment in her opinion, or words to that effect. He then began harshly attacking her performance. Prior to this meeting with Cieutat, Plaintiff had never been made aware of any issues with her performance or work product.

17. Soon after that conversation, Plaintiff again called Grayson, and again asked for a transfer. Plaintiff did not want to resign from the company, but felt as though the atmosphere in her department was negatively affecting her health.

18. In response to Plaintiff's request for a transfer, Grayson informed Plaintiff that her request for a transfer could not be accommodated because she was being terminated for performance reasons, and that her U-4 license would reflect a termination for poor performance.

19. Defendant's management directed, encouraged and participated in the above-described unlawful conduct. Further, Defendant's Human Resources department

failed to take appropriate remedial action and, in effect, aided and abetted in the unlawful conduct. Thus, Plaintiff was exposed to unlawful gender discrimination and retaliation that have a lasting adverse effect on her future employment.

**Plaintiff Suffered Damages**

20. Plaintiff lost wages and other benefits, suffered embarrassment and humiliation, and her career was irreparably injured as a result of Defendant's conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's conduct.

21. Defendant's actions have caused and continue to cause Plaintiff substantial losses in earnings, management opportunities and other employment benefits, in an amount to be determined by a jury.

22. Defendant acted or failed to act as herein alleged with malice or reckless indifference to the protected civil rights of Plaintiff. Plaintiff is thus entitled to recover damages in an amount to be determined by a jury.

## COUNT I

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

23. Plaintiff realleges paragraphs 1 through 22 and incorporates them by reference as paragraphs 1 through 22 of Count I of this Complaint.

24. Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, as amended by the Civil Rights Act of 1991 makes it unlawful to discriminate against any individual by denying the individual employment opportunities with respect to the terms, conditions, or privileges of employment on the basis of gender or race.

25. By its conduct alleged herein, Defendant engaged in unlawful employment practices under Title VII.

26. Defendant has allowed the unlawful conduct alleged herein to exist and to go unremedied for so long that it amounts to a policy or practice, and constitutes Defendant's standard operating procedure.

27. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

## COUNT II

### RETALIATION IN VIOLATION OF TITLE VII

28. Plaintiff realleges paragraphs 1 to 28 and incorporates them by reference as paragraphs 1 to 28 of Count II of this Complaint.

29. Title VII, specifically 42 U.S.C. 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

30. Plaintiff complained of sexual discrimination.

31. By its conduct alleged here, Defendant unlawfully retaliated against Plaintiff for her complaints in violation of the anti-retaliation provisions of Title VII.

32. The unlawful employment practices alleged herein were intentional and were performed by Defendant with malice or reckless indifference to Defendant's obligations under Title VII.

33. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant as follows:

a. Enter an appropriate injunction compelling Defendant to cease and desist from the wrongful practices herein alleged and hereafter established;

b. Declare that the Defendant's acts violate the anti-retaliation provisions of Title VII;

c. Award Plaintiff the present value of all compensation and benefits lost and all benefits she will lose in the future as a result of Defendant's unlawful conduct;

d. Award Plaintiff liquidated damages;

e. Award Plaintiff prejudgment interest;

f. Award Plaintiff reasonable attorneys' fees, costs and disbursements;

g. Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

_____
Heather Griggs – Pro Se Litigant

Heather Griggs
130 143rd Ave
Madeira Bch, FL 33708